LUCY M. L. CLINTON, Respondent, v. ARTHUR J. CLINTON, Appellant.

Kansas City Court of Appeals, January 14, 1895.

Divorce: INDIGNITIES: INFIDELITY. On the evidence in this case it is *held*, that the frequent and unjust charges of infidelity furnish ample proof of such indignities as to render the condition of the plaintiff, as the wife of the defendant, intolerable and warrant a decree in her behalf.

*Appeal from the Cass Circuit Court.*—HON. W. W. WOOD, Judge.

AFFIRMED.

*Burney & Burney* and *Wm. L. Jarrott* for appellant.

(1) The marriage contract should only be dissolved upon full and satisfactory evidence; the rule of inviolability that attaches to the verdict of a jury in other civil actions, where there is some evidence to support it, does not apply in causes of this character. The mind of the judge must be satisfied, not only of the sufficiency of the causes alleged, but of the truth and sufficiency of the evidence by which they are established, independently of the verdict. *Paulson v. Paulson*, 21 S. W. Rep. 778; *Moore v. Moore*, 22 Tex.

239; *Minde v. Minde*, 32 N. W. Rep. (Mich.) 868. In divorce cases appellate courts are not bound by the finding of facts made by the trial courts. *Griesedieck v. Griesedieck*, 56 Mo. App. 94. The court should review all of the evidence and determine its weight and effect regardless of the finding of the trial court. *Waddingham v. Waddingham*, 21 Mo. App. 609; *Crawford v. Spencer*, 36 Mo. App. 86; *Cannon v. Cannon*, 17 Mo. App. 290; *Morrison v. Morrison*, 7 W. Rep. (Mich.) 175.

*R. T. Railey* and *Noah M. Givan* for respondent.

(1) In a divorce case it is the province of the appellate court to examine the entire evidence; at the same time deference should be paid to the judgment of the trial court, and it should be made clearly to appear that manifest error has been committed in the conclusion reached, before the judgment will be reversed. *King v. King*, 42 Mo. App. 454; *Nichols v. Nichols*, 39 Mo. App. 291; *Cox v. Cox*, 913 Mo. 78; *Griffith v. K. C. M. & C. Co.*, 46 Mo. App. 545. (2) The judgment of the trial court is supported by the undisputed evidence, except appellant. (3) Even if the findings contained in the judgment of themselves would not authorize a divorce, which is by no means admitted, yet there was no error in the judgment if, upon the pleadings and all the evidence in the case, she was entitled to a divorce. *Bobb v. Letcher*, 30 Mo. App. 43; *Griffith v. K. C. M. & C. Co.*, 46 Mo. App. 544; *Jordan v. Buschmeyer*, 97 Mo. 94; *Reese v. Cook*, 17 Mo. App. 517; *Kurlbaum v. Roepke*, 27 Mo. 161. (4) The reasons announced by the court to sustain its judgment constitute no part of the judgment. The judgment is the final determination of the rights of the parties to the action. R. S. 1889, sec. 2206; Freeman

on Judgments, sec. 2; 3 Blackstone's Com. 395; *Ætna Ins. Co. v. Swift*, 12 Minn. 437. (5) Charges of infidelity wrongfully made by the husband against the wife are such personal indignities as are contemplated by the statutes and are grounds for divorce. *Lewis v. Lewis*, 5 Mo. 278; *Miller v. Miller*, 14 Mo. App. 420; *Griesedieck v. Griesedieck*, 56 Mo. App. 94; *Williams v. Williams*, 2 S. W. Rep. (Tex.) 823; *Lyle v. Lyle*, 6 S. W. Rep. (Tenn.)878; *Rodger v. Rodger*, 17 S. W. Rep. (Ky.) 573.

GILL, J.—This is an action for divorce, the plaintiff charging in her petition that the defendant offered her such indignities as to render her condition intolerable. At a hearing below the court granted the divorce and defendant appealed.

After a careful consideration of this record, consisting of more than two hundred pages printed evidence, we discover no just reason for disturbing the judgment and it will therefore be affirmed.

We shall not attempt in the brief space of an opinion to give in detail the many acts of cruelty and indignity which plaintiff's evidence tends to prove she received at the hands of the defendant husband. Mrs. Clinton was, prior to her marriage with defendant in August, 1891, a Miss Hook, residing with her widowed mother in Lafayette county, Missouri. At this time she had a married sister, the wife of a Baptist minister by the name of Price. For several months after their marriage, Clinton and his wife resided with the Rev. and Mrs. Price. Subsequently, and during the year 1892 and till August, 1893, the Clintons kept house, living a portion of the time in East Lynne and a part of the time in Harrisonville, Missouri. In July, 1892, a girl baby was born, and again in August, 1893, a second one. This last *accouchment* was had at the residence of

Mrs. Clinton's mother (Mrs. Hook) at Pleasant Hill. Mr. and Mrs. Price were also living in the same house. On her recovery, Mrs. Clinton refused to return to her husband; gave him notice that she would no longer cohabit with him, and, in September, 1893, brought this suit for divorce.

If, now, the plaintiff's witnesses are to be believed, and we discover no reason to discredit them, the two years during which Mr. and Mrs. Clinton lived together as husband and wife witnessed, with rare and brief exceptions, a continuous state of humiliation, personal mortification and sore distress on the part of the wife; and all, too, because of the groundless jealousy of the husband. This bulky record fully justifies the finding of the trial court, where, in the body of the decree, it is said: "That soon after the marriage of plaintiff and defendant, defendant developed an intensely jealous disposition and by his acts, words and conduct exhibited a suspicion of plaintiff's chastity and fidelity towards him which was so apparent to plaintiff as to cause her the most intense mental anguish; that he exhibited not only a suspicion of her fidelity towards him, but, by his conduct of the same nature and character continued up to and after the birth of his children, continued to question, not only plaintiff's character for chastity, but to draw in question the paternity of his children; that his acts and conduct in that respect were so unmistakable that plaintiff was caused great trouble thereby and the most intense mental anguish." That he directly charged his wife with adulterous conduct the defendant denies, yet he practically admits that he was suspicious of her and did so accuse her by frequent innuendoes. The weight of the testimony shows that he did both—charged her personally, and to her mother and sister, with being on terms of criminal intimacy with her brother-in-law. And while his wife was in

that critical period, the second day after the birth of the last child, he so conducted himself at the bedside of this prostrated mother as to cast suspicion on her chastity and to question the infant's paternity. Not only so, but frequently during the period of gestation preceding the last confinement, his conduct was of the same culpable nature. This naturally produced great mental distress on the part of the plaintiff.

The evidence shows, too, that these charges of infidelity were not only wholly untrue, but there had in fact nothing occurred, there was no conduct on the part of Mrs. Clinton, that gave any ground whatever to suspect a breach of her marital vows. And at the trial, when plaintiff's counsel were about introducing evidence as to her good conduct and spotless reputation, the defendant authorized the admission that plaintiff's character was above reproach. These charges of infidelity, so frequently and unjustly made, furnish ample proof of such indignities as to render the condition of the plaintiff, as the wife of the defendant, intolerable; and the ground provided by our statute of divorce was made out. *Lewis v. Lewis*, 5 Mo. 278.

The judgment will be affirmed. All concur.